UNITED STATES of America, Plaintiff–Appellee,

v.

Abel MARTINEZ–DURAN, Carrie Roger–Sandoval, aka Roger Carrie–Sandoval, Defendants–Appellants.

Nos. 89–50583, 89–50641.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1990.

Decided Feb. 28, 1991.

---

Inge Brauer, Brauer & Sharpe, San Diego, Cal., for defendant-appellant Abel Martinez–Duran.

Gerald E. Utti, Encinitas, Cal., for defendant-appellant Roger Carrie–Sandoval.

Judith S. Feigin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FLETCHER, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

Abel Martinez–Duran appeals his twenty month sentence for use of a communication facility in committing a drug offense, claiming the district court's upward departure was unreasonable. Roger Carrie–Sandoval[1] appeals his twenty-four month sentence for renting or managing a building for the purpose of storing, distributing and/or using heroin, claiming it was error to add two offense levels for his role as an organizer in the offense. We remand in part and affirm in part.

## DISCUSSION

### I. *Martinez–Duran*

Under § 2D1.6 of the Sentencing Guidelines, Martinez–Duran's base offense level was twelve. United States Sentencing Commission, *Guidelines Manual*, § 2D1.6 (Nov. 1989). The presentence report recommended lowering the offense level by two points for acceptance of responsibility. The guideline range for the adjusted offense level of ten and a criminal history category of I is six to twelve months. The presentence report recommended a nine month sentence.

---

1. While the record and briefs refer to him by at least three other names, to avoid confusion we have chosen to refer to him as Roger Carrie–Sandoval.

The government filed a motion for upward departure before the sentencing hearing. The motion requested a departure to twenty-four months, because "the probation officer did not take into account that heroin was found in the car in which defendant Martinez–Duran was a passenger," and "possession of a controlled substance, to wit, heroin, is an aggravating factor that was not taken into consideration by the Sentencing Commission and warrants departure." The motion also stated that the heroin was forty-six percent pure which "is consistent with what is considered to be of good quality." The district court departed upward to twenty months, adopting the government's reasons.

Martinez–Duran claims that the district court erred in considering his presence in the car, his actual possession of the drug, and the purity of the heroin in departing from the guideline range. He contends that there was no evidence establishing the heroin's purity, and that no claim was made that the purity was unusually high. He also claims that the district court did not properly specify the reasons for its departure or the reasoning behind the amount of departure, and that his physical presence at the scene was taken into account by the Guidelines in setting the offense level for the use of a communications facility in the commission of a drug offense.

The standard of review for departures from the Guidelines in this Circuit is unsettled. In *United States v. Lira–Barraza,* 897 F.2d 981 (9th Cir.), *reh'g granted,* 909 F.2d 1370 (1990), this court set forth a five-step process for review. *Lira–Barraza,* however, was withdrawn on August 10, 1990, pending an *en banc* rehearing. We reach the same result whether we use the *Lira–Barraza* standard or apply the three-step process adopted by several other circuits.

### A.

Under the latter standard, we first review de novo the legal question whether the articulated basis for departure was permissible under the Guidelines. *See United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), *quoted in*

*United States v. Rodriguez,* 882 F.2d 1059, 1067 (6th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). *See also United States v. Summers,* 893 F.2d 63, 66 (4th Cir.1990); *United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989); *United States v. White,* 893 F.2d 276, 277–79 (10th Cir.1990). The second step reviews for clear error the factual circumstances relied on for departure. *Diaz–Villafane,* 874 F.2d at 49. Finally, the third step reviews the direction and amount of departure for reasonableness. *See id.* at 49; 18 U.S.C. § 3742(e)(3). This is tantamount to deciding whether the district court abused its discretion. *See Diaz–Villafane,* 874 F.2d at 52.

### 1. Adequacy and legal permissibility of reasons given for departure

■ The district court stated that departure from the Guidelines was appropriate because Martinez–Duran was present when the instructions to deliver the heroin were given, carried the heroin to the car, and was present at the sale to the DEA agent. The court also stated that the amount and purity of the heroin were additional support for the departure. These reasons are sufficiently specific to permit meaningful appellate review. *See United States v. Wells,* 878 F.2d 1232, 1233 (9th Cir.1989) ("The district court must set forth the specific aspects of ... the charged offense that the district court believes have not been adequately represented in the recommended sentence."). Unusually high purity of the drugs and an unaccounted for role in the offense are legally permissible grounds for departure if they are supported adequately by the record. *See* U.S.S.G. § 2D1.1, Application Note 9; U.S.S.G. § 5K2.0.

### 2. The factual basis for departure

As part of his plea agreement, Martinez–Duran agreed not to contest the factual basis for the plea. He therefore cannot contest the description of his participation in the drug transaction or the purity of the heroin. The district court did not clearly err in deciding that his actions constituted far more than a mere telephone call. It did err, however, in relying on the heroin's purity.

■ Martinez–Duran's actions go considerably beyond the act of using a communication facility in the commission of a drug offense. The district court could properly find that such actions were not taken into account when the Sentencing Commission set the guideline range for use of a communication facility. Indeed, defense counsel's "surmise" that Martinez–Duran was taken along on the drug sale "to show some sort of support rather than sending a juvenile by himself...." itself, indicates significant participation in the drug transaction, above and beyond the use of a communication facility, sufficient to warrant an upward departure.

We reject Martinez–Duran's assertion that the Sentencing Commission necessarily took his behavior into account, because actual sales activity and possession would be typical facts in a telephone transaction. Use of a communication facility does not necessarily involve being present at a drug sale, nor does it necessarily require possession of the controlled substance. We find that Martinez–Duran's presence at the sale and actual possession of the heroin were permissible bases for departure.

■ Accepting that the heroin involved was forty-six percent pure, we must still decide whether this fact justified upward departure. Commentary to the Sentencing Guidelines provides that "[t]rafficking in controlled substances ... of unusually high purity may warrant an upward departure.... particularly in the case of heroin ... because it is probative of the defendant's role or position in the chain of distribution." U.S.S.G. § 2D1.1, Application Note 9. Although the commentary refers specifically to the offenses of manufacturing, importing, exporting or trafficking, the rationale for departing on the basis of purity would seem to apply to a telephone count as well. *See United States v. Ryan*, 866 F.2d 604, 607–08 (3d Cir.1989) (considering purity when sentencing for simple possession).

We find no evidence in the record to support a finding that heroin of forty-six percent purity is "of unusually high purity." Nor do we find that the district court

made such a finding. No evidence was adduced as to what level of purity constitutes unusually high purity with respect to heroin. Although the government purported to rely upon "narcotics experts" for the proposition that forty-six percent purity is "consistent with what is considered to be of good quality," it provided no factual proof to support its assertion. Moreover, its contention that the heroin was either of "good quality" or "fairly high purity" is insufficient to warrant departure. The drug must be "of unusually high purity" to justify departure. See U.S.S.G. § 2D1.1, Application Note 9.

As the district court failed to find that the heroin involved here was "of unusually high purity," and as we see no basis in the record for such a finding, we conclude that the heroin's purity was an improper basis for departure.

3. *Amount of departure*

■ The district court departed upward to twenty months, eight months higher than the high end of the relevant guideline range and eleven months higher than the nine months recommended in the presentence report. While Martinez–Duran's participation in the actual drug transaction over and above the use of a communication facility is a permissible ground for departure, we cannot know the effect the heroin's purity might have had on the court's decision to depart, or on the amount of its departure. Thus, it would be premature for us to review the reasonableness of the amount of the departure prior to allowing the district court to resentence Martinez–Duran. The fact that we remand for resentencing to permit the district court to reevaluate its departure, and the amount of that departure, in light of our holding that reliance on the heroin's purity was impermissible under the circumstances, reflects no view as to whether the twenty month sentence would be unreasonable *if* based on only the single permissible ground for departure.

B.

Under the standard set out in *Lira–Barraza*, the departure in Martinez–Duran's case satisfies step one, which reviews de novo whether the district court stated the

reasoning for departure and identified the specific aggravating circumstances present in the case. 897 F.2d at 983–84. Step two reviews for clear error whether the factual basis for departure actually exists. *Id.* at 984. As discussed *supra,* the factual basis for departure regarding Martinez–Duran's involvement beyond using a communication facility was not clearly erroneous. Reliance upon the heroin's purity, however, was an error under the circumstances. Step three reviews de novo whether the Sentencing Commission took the circumstance justifying departure into account when formulating the relevant guideline. *Id.* at 984–85. Again, as discussed *supra,* Martinez–Duran's actions were not taken into account in the guideline for use of a communication facility. Step four reviews for an abuse of discretion whether the sentencing court should use the identified circumstance as a basis for departure. *Id.* at 985. By relying upon Martinez–Duran's actions in addition to his use of a communication facility as a basis for upward departure, the district court has not abused its discretion. Finally, step five reviews the amount of departure for an abuse of discretion. *Id.* at 986. As we have explained, we have no occasion to review the reasonableness of the amount of departure until the district court has had an opportunity to resentence in light of our holding.

## II. *Carrie–Sandoval*

The base offense level for Carrie–Sandoval's offense was sixteen, under U.S.S.G. § 2D1.8. The presentence report calculated his criminal history category as I. The resulting range was twenty-one to twenty-seven months. The presentence report recommended a twenty-four month sentence. The government requested an upward departure to thirty-three months, because Carrie–Sandoval was an organizer or manager as described in U.S.S.G. § 3B1.1(c).

At sentencing, the district court granted Carrie–Sandoval a two-point reduction in the offense level, from sixteen to fourteen, for acceptance of responsibility. The court then added two points for his managerial role, bringing the offense level back up to sixteen, and imposed a sentence of twenty-four months. If the offense level had remained at fourteen, the sentencing range would have been fifteen to twenty-one months.

U.S.S.G. § 3B1.1, *Aggravating Role,* provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

Carrie–Sandoval claims that it was improper to apply § 3B1.1(c) to him because the offense to which he pled guilty, 21 U.S.C. § 856, incorporated his status as a manager. That statute provides:

(a) Except as authorized by this subchapter, it shall be unlawful to—

.        .        .        .        .

(2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a)(2) (1988). On its face, this section criminalizes only the managing of the building or other location where the drug operation takes place. The statute does not address other forms of management. The relevant guideline, § 2D1.8, assigns a base offense level of sixteen to "Renting or Managing a Drug Establishment" and the commentary describes the offense as "knowingly opening, maintaining, managing, or controlling any building, room, or enclosure for the purpose of manufacturing, distributing, storing, or using a controlled substance contrary to law." U.S.S.G. § 2D1.8, comment. (backg'd).

At the sentencing hearing, the DEA agent who had been observing the Gregory Street residence gave his opinion that the brief stop there by Martinez–Duran and the juvenile before the second heroin transaction was specifically for the purpose of picking up the drugs. The second witness was a DEA agent who had gone to the Gregory Street address to execute a search warrant. She testified that she answered a phone call from a Todd McCredie, who attempted to arrange to buy heroin from Alex or Jose. At a later meeting with McCredie, he explained that Alex and Jose were one person, and he had been buying small amounts of heroin from Alex/Jose at his various residences (all rented houses) for twelve months. McCredie also explained that Alex/Jose employed a number of people to sell drugs from the residences, and identified Carrie–Sandoval as Alex/Jose when shown a photo spread. The DEA agent also testified that the juvenile who had driven Carrie–Sandoval's car identified him as the supplier. The presentence report also detailed McCredie's allegations about Carrie–Sandoval's activities.

■ From this information, the district judge concluded that a preponderance of the evidence established that Carrie–Sandoval was Alex/Jose, and added two points for the managerial role. On appeal, Carrie–Sandoval does not specifically challenge any of the above facts or the district judge's conclusion that he was Alex/Jose. He simply asserts that his managerial role was already taken into account by 21 U.S.C. § 856 and guideline § 2D1.8.

The statute, however, does not criminalize any management activity beyond the managing of the building or other real estate with the knowledge that it is being used for the distribution of a controlled substance. If Carrie–Sandoval had done no more than rent the Gregory Street residence and knowingly make it available for drug distribution, perhaps the two-point addition for a management role would be duplicative. There was ample evidence, however, that he managed other drug-related activities and people, going beyond mere control of the Gregory Street address. This related information could be considered "relevant conduct" in calculating the base offense level. *See United States v. Turner*, 898 F.2d 705, 710–11 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990).

Carrie–Sandoval argues that because the district court added only two offense levels for his role in the offense under § 3B1.1(c), it implicitly rejected the testimony that he organized or managed criminal activity involving five or more participants, or that the activity was otherwise extensive, which would have called for an increase of four or three levels under § 3B1.1(a) or (b), respectively. He claims that the district court, therefore, must have considered his activity to be no more than the managing of the property on Gregory Street.

We reject this argument. First, the government's original request for departure asked only for a two-point increase in the offense level under § 3B1.1(c). The district court thus did not have before it a written request for a higher increase. It is true that at the sentencing hearing the government briefly argued that Carrie–Sandoval's involvement was "otherwise extensive" so as to justify a higher increase of three or four points under § 3B1.1(a) or (b). Its main argument, however, focused on a two-point increase.

Second, § 3B1.1(c) fits well with one interpretation of Carrie–Sandoval's role in the offense: he was a leader or manager of criminal activity, which, while it was not proven to be so extensive as contemplated by § 3B1.1(a) or (b), nevertheless went beyond the management of the Gregory Street address, and thus merited a two-point increase. In imposing the two-point increase, the district court stated merely that a preponderance of the evidence showed that Carrie–Sandoval was Alex/Jose, and did not detail the management activities. The simple statement that Carrie–Sandoval was a manager, however, is sufficient. *See United States v. Sanchez–Lopez*, 879 F.2d 541, 557–58 (9th Cir. 1989) (a simple statement that defendant was a minor participant was an adequate factual finding).

This court gives due deference to the district court's application of the Guidelines

to the facts. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990). The district court's determination of Carrie–Sandoval's role in the offense depends heavily on the facts of the case, and should therefore be upheld unless clearly erroneous. *See United States v. Fuentes–Moreno*, 895 F.2d 24, 26 (1st Cir.1990). We find no clear error in the addition of two offense levels for a managerial role.

## CONCLUSION

Because the district court relied upon an inadequately supported ground for departure in sentencing Martinez–Duran, we remand for resentencing. Finding no errors with respect to Carrie–Sandoval's sentencing, we affirm.

REMAND as to Martinez–Duran.

AFFIRM as to Carrie–Sandoval.