956 F.2d 276
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrell ROBINS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kimmon BORENS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard GREENE, Defendant-Appellant.
 Nos. 90-50358, 90-50394 and 90-50474.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 3, 1992.*
Decided Feb. 14, 1992.
 
 Before BRUNETTI, O'SCANNLAIN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellants Darrell Robins, Kimmon Borens, and Richard Greene appeal their convictions under 21 U.S.C. § 846 and 21 U.S.C. § 841(a) for conspiracy to distribute cocaine and distribution of cocaine. Robins and Greene also appeal their sentences. We affirm.[1]
 
 
 3
 * The charges against appellants arose out of two sales of cocaine to undercover DEA agents. In the first transaction, Robins and a co-defendant, Kevin Jones, met with DEA agents at a restaurant called the Cheesecake Factory. In the restroom, Robins gave one of the agents a box containing 245.1 grams of cocaine base. When they returned to the table, the agent paid Jones $4,800.
 
 
 4
 The second transaction took place at the Beverly Hilton Hotel. The DEA agents rented two rooms: one in which the meeting was conducted, and a second from which the meeting room was surveilled. Robins and another co-defendant, Richard Alvarado, had agreed to deliver cocaine to the hotel. Robins, Borens and Byron Bolton, who was acting as a confidential informant for the government, brought a briefcase full of cocaine to the meeting room. The cocaine had been obtained from Richard Greene. The agents paid Robins $8,500 for the drugs. Bolton and Robins then received a telephone call from Greene, who reportedly stated that more cocaine than intended had been delivered, and demanded more money. Shortly thereafter, Borens, Bolton, and one of the DEA agents went to the hotel parking area to pay Greene an additional $2,000.
 
 
 5
 Robins, Borens, and Greene, together with Richard Alvarado and Kevin Jones, were indicted as a result of these sales. Robins was charged with two counts of conspiracy to distribute cocaine, one count for each transaction, as well as two counts of distribution. Borens and Greene were charged with conspiracy to distribute and distribution of cocaine in connection with the Beverly Hilton sale. Robins and Borens were convicted on all counts after a jury trial. Greene was convicted at a separate bench trial. Bolton testified for the government at both trials. Robins, Borens, and Greene all timely appealed.
 
 
 6
 In November 1990, approximately one year after the jury trial of Robins and Borens and seven months after Greene's bench trial, the government learned that Bolton had several prior misdemeanor convictions, had been charged in a felony complaint, and had been the subject of two bench warrants in California state courts. The government promptly informed appellants. Borens filed a motion for a new trial based on this information; Robins joined the motion. After two hearings, the district court denied the motion.
 
 II
 
 7
 All three appellants claim that they are entitled to a new trial because the government's failure to disclose informant Bolton's prior criminal record before trial violated the rule of Brady v. Maryland, 373 U.S. 83 (1963).[2] Under Brady and its progeny, suppression of material exculpatory evidence by the prosecution violates due process. See Brady, 373 U.S. at 87; United States v. Bagley, 473 U.S. 667 (1985). Evidence that would impeach a prosecution witness, if material, falls within the Brady rule. Bagley, 473 U.S. at 676.
 
 
 8
 The prosecution's failure to disclose Bolton's prior record did not violate Brady because the government was neither aware of nor in possession of that record until well after the trial. [Supplemental Excerpts of Record--Robins at 11] The government, acting in good faith, had made reasonable efforts to determine if Bolton had a criminal record. When asked if he had a criminal record, Bolton responded that he had no arrests or convictions for offenses other than traffic violations. In accordance with standard procedure, the DEA ran a computer search in the California Indexing Information database, which contains information from state law enforcement agencies and state courts. The computer search came up negative.
 
 
 9
 The government's obligation to disclose Brady material does not encompass material which is beyond the government's control or of which the prosecution is unaware. As we stated in United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 824 (9th Cir.), cert. denied, 471 U.S. 1139 (1985), "[w]hile the prosecution must disclose any information within the possession or control of law enforcement personnel ... it has no duty to volunteer information that it does not possess or of which it is unaware." Information in state files is not within the control of a federal prosecutor for Brady purposes. See United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991).
 
 
 10
 Appellants argue that the prosecution should be charged with knowledge of Bolton's record. We disagree. It is true that a prosecutor who possesses exculpatory information violates Brady by failing to disclose that information, even if the disclosure is due to a failure to recognize the exculpatory nature of the information. United States v. Agurs, 427 U.S. 97, 110 (1976). It is also true that knowledge of information in the hands of one federal agency or employee may in certain circumstances be attributed to another. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bryan, 868 F.2d 1032, 1036-1037 (9th Cir.), cert. denied, 493 U.S. 858 (1989). These principles do not aid appellants, however. The information here was simply not in the possession of any federal agency until nearly a year after the trial, despite the prosecutor's good faith, diligent efforts to obtain it. This is not a case where the prosecution failed to seek out readily available information. See United States v. Perdomo, 929 F.2d 967 (3d Cir.1991); United States v. Auten, 632 F.2d 478 (5th Cir.1980). There is no evidence that the prosecutor deliberately turned a blind eye to Bolton's record. Under the circumstances, the prosecution was not required to disclose what it did not possess.
 
 III
 
 11
 Appellant Greene asserts two additional claims of error.[3] We reject both claims.
 
 
 12
 * Greene first argues that the evidence was insufficient to sustain his convictions. He claims that, because he made a prima facie showing of duress, the government was required to disprove this defense beyond a reasonable doubt. This, Greene asserts, the government failed to do.
 
 
 13
 We need not decide whether Greene's view of the burden of proof correctly states the law, because his showing of duress was insufficient. To make out a prima facie case of duress, the defendant must present evidence sufficient to raise a triable issue of fact on three elements: (1) immediate threat of death or grave bodily harm; (2) well grounded fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm. United States v. Charmley, 764 F.2d 675, 676 (9th Cir.1985); United States v. Jennel, 749 F.2d 1302, 1305 (9th Cir.1984), cert. denied, 474 U.S. 837 (1985). Greene failed to raise a triable issue of fact on any of these elements.
 
 
 14
 According to Greene's own testimony, neither Robins nor anyone else directly threatened him with any harm. Greene testified only that Robins "mentioned that ... [he] was carrying a gun in the trunk of the car, an AK 47." Robins did not threaten to use the gun against Greene, nor did Greene see the gun at any time. Greene's testimony did not demonstrate either an immediate threat of serious harm or a reasonable fear that the threat would be carried out.
 
 
 15
 Moreover, Greene's testimony, far from demonstrating that he lacked a reasonable opportunity to escape, showed that he had abundant opportunity to withdraw from the crime and notify the authorities. Greene followed Robins, Borens, and Bolton to the hotel in a separate car. When the others went inside, Greene remained in the parking area in his car, accompanied only by Monte, who Greene does not allege made or was involved in any threats. Greene admits that he used a public telephone to call Robins at the hotel room. Surely he could just as easily have called the police.
 
 
 16
 Greene did not make out a prima facie duress defense. In the absence of such a defense, the evidence was more than sufficient to allow a rational trier of fact to find beyond a reasonble doubt that Greene was guilty of the crimes charged.
 
 B
 
 17
 Greene also asserts that the district court erred in admitting evidence of his prior conviction for selling cocaine. Evidence of a prior felony conviction may be admitted for the purpose of impeaching a defendant if the court determines that the probative value of the evidence outweighs its prejudicial effect. Fed.R.Evid. 609(a)(1). In making this determination, the district court should consider five factors: (1) the impeachment value of the prior conviction; (2) the time of the prior conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. United States v. Wallace, 848 F.2d 1464, 1473 n. 12 (9th Cir.1988).
 
 
 18
 Four of these factors weigh in favor of admitting Greene's prior conviction. The prior conviction was probative on the crucial issue of whether Greene willingly entered into the drug transaction or did so only as a result of coercion; the impeachment value of the evidence was therefore high. The conviction occurred less than two years prior to the charged offense. Greene's testimony was crucial to his claim of duress. Because no other evidence supported his claim, and because Greene's testimony conflicted with that of other witnesses, his credibility was directly in issue.
 
 
 19
 The fifth factor, similarity of the prior offense to the charged offense, weighed against admission. However, if a prior conviction serves a proper impeachment purpose it may be admitted despite similarity to the charged offense. United States v. Perkins, 937 F.2d 1397, 1406 (9th Cir.1991); United States v. Browne, 829 F.2d 760, 763 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988). The chief danger posed by admission of prior convictions for similar crimes is that the jury will assume a defendant who committed a certain crime before must have done it again. See United States v. Bagley, 772 F.2d 482, 488 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986). The danger of such an improper assumption is considerably lessened in a bench trial, as the judge is presumed not to draw impermissible inferences. See Harris v. Rivera, 454 U.S. 339, 346 (1981) (per curiam). Accordingly, we hold that the trial judge did not abuse his discretion in allowing the use of Greene's prior conviction for impeachment purposes.
 
 IV
 
 20
 Appellants also raise two challenges to their sentences. We consider each in turn.
 
 
 21
 * Robins and Greene argue that the district court erred in setting their base offense levels for sentencing. The district court found that the Beverly Hilton sale involved more than 500 grams of cocaine base, and accordingly set a base offense level of 36. U.S.S.G. § 2D1.1(c)(4).[4] Appellants contend that the evidence was not sufficient to allow the district court to find beyond a reasonable doubt that more than 500 grams of cocaine was involved.[5]
 
 
 22
 This argument misapprehends the government's burden of proof. The amount of cocaine involved is not an element of the offense with which appellants were charged, but a sentencing factor. United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991), petition for cert. filed, Oct. 15, 1991. As such, it need only be established by a preponderance of the evidence. United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc).
 
 
 23
 Applying the correct standard with respect to burden of proof, we discern no error in the district court's finding that the second transaction involved 502 grams of cocaine base. The district court found the government's analysis more persuasive than that performed by the defense expert because the government expert analyzed the substance shortly after it was seized, while it remained in solid form. Moreover, a government witness who observed the defense expert's analysis testified that, when the expert removed the liquefied substance from the evidence bag for weighing, some quantity remained behind. This testimony provides a reasonable explanation for the ten percent weight differential between the government's and the defendants' analysis.
 
 B
 
 24
 Robins also challenges the three-point upward adjustment imposed for his role in the offense. He asserts that the district court did not make sufficiently specific findings as to the identities of the participants in the offense and that there was not sufficient evidence to conclude that five or more participants were involved.
 
 
 25
 The Guidelines provide for a three-point upward adjustment "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The Commentary explains that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, Application Note 1. We review the district court's factual findings under section 3B1.1 for clear error. United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir.1990).
 
 
 26
 The district court found that the two transactions with which Robins was charged were part of a single common scheme or plan. This finding was not clearly erroneous. Under the Guidelines, all four counts of which Robins was convicted were properly grouped together. See U.S.S.G. § 3D1.2(d). When counts that are part of a single scheme are grouped, adjustments pursuant to section 3B1.1 should be based on all acts comprising the common scheme. See U.S.S.G. § 1B1.3(a)(2). The district court thus properly considered both sales transactions in determining whether the offense involved five or more participants.
 
 
 27
 The evidence supports the conclusion that at least five persons were involved in Robins' scheme to distribute cocaine. The district court did not need to specifically list the participants. Four defendants, Robins, Borens, Greene, and Jones, were convicted, and hence clearly criminally responsible. Co-defendant Alvarado was recorded discussing drug transactions with the undercover agents, providing sufficient evidence of criminal participation. In context, it is clear that the district court relied on at least these participants, who the prosecutor specifically listed as criminally responsible in response to the court's inquiry, in imposing the upward adjustment.
 
 
 28
 Nor do we find clear error in the district court's finding that Robins acted as a manager or supervisor. Robins, together with Alvarado, acted to set up the deals and to obtain the drugs. The district court could reasonably conclude that Robins orchestrated the actions of other conspirators. The district court's simple statement that Robins was a manager was an adequate factual finding. United States v. Martinez-Duran, 927 F.2d 453, 458 (9th Cir.1991).
 
 V
 
 29
 For the reasons noted above, appellants' convictions and sentences are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 We also grant the government's motion to strike footnote 1 from appellant Robins' opening brief
 
 
 [2]
 Because we reject this argument on the merits, we need not consider the effect of Greene's failure to join in the motion for a new trial on his ability to raise this claim
 
 
 [3]
 Although appellant Robins states in his brief that he joins all arguments asserted by his co-appellants, neither of Greene's claims is applicable to Robins
 
 
 [4]
 All references to the Guidelines are to the November 1989 edition of the Guidelines Manual, which was in effect at the time of appellants' sentencing
 
 
 [5]
 Appellants have not challenged the district court's finding that the material transferred contained cocaine base rather than cocaine hydrochloride