35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Jearell BIRCHER, Defendant-Appellant.
 No. 93-10536.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Sept. 8, 1994.
 
 1
 Before: LEAVY and KLEINFELD, Circuit Judges, and VAN SICKLE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant William Bircher appeals his conviction for distribution of cocaine and possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841. He contends that the trial court (1) should have granted his motions for a mistrial, based on assertedly improper comments by the prosecutor and by a witness for the prosecution, and (2) improperly refused his proffered "mere presence" instruction.
 
 
 4
 Bircher also appeals the sentence imposed on him under the Sentencing Guidelines. In this vein, he argues that the trial court (1) should not have granted the government's request for an upward departure, and (2) improperly enhanced his sentence for possession of firearms.
 
 
 5
 We affirm the district court in all respects.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 6
 In March 1992, Greg Gray informed Officer William Brooks of the North Las Vegas Police Department that a Jearell Richards, apparently an alias of Bircher, was selling narcotics. Brooks had Gray arrange a meeting with Bircher.
 
 
 7
 Bircher owned two houses in Las Vegas: one on 1165 Hart Street, which he purportedly rented to another individual, and a second on 3109 Clamdigger Lane, which served as Bircher's primary residence. On March 24, 1992, Brooks and Gray went to the house on Hart Street, where they met Bircher. Bircher offered to sell them 250 grams of powder cocaine for $4,500. He also offered to convert the powder into cocaine base for an additional $300. After some quibbling over the price, Brooks purchased the cocaine but declined the offer of cocaine base.
 
 
 8
 Agents of the Drug Enforcement Administration (DEA) later obtained warrants to search both of Bircher's houses. At the Hart Street address, the agents found nearly 750 grams of cocaine, a triple-beam scale, plastic ziplock bags, and personal checks in Bircher's name. At the Clamdigger Lane address, the agents found approximately $65,000 in cash, and several weapons: a shotgun, an assault rifle, and a handgun. Bircher was not present during either search.
 
 
 9
 The agents also discovered that Bircher, in addition to his two homes, apparently owned several cars. At the time of the March 1992 drug sale, Bircher drove a black Corvette, and police observed a Ford Explorer parked in the Hart Street driveway. Upon executing their search warrants, DEA agents found a BMW parked in the driveway of the Clamdigger residence. Bircher was then stopped while driving a Mercedes Benz.
 
 
 10
 On October 28, 1992, a federal grand jury indicted Bircher on charges of distributing cocaine in violation of 21 U.S.C. Sec. 841, possessing cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841, and using firearms in relation to drug trafficking in violation of 18 U.S.C. Sec. 924(c)(1). Bircher's trial began on April 5, 1993. The district court dismissed the firearms count at the close of the government's case. The jury found Bircher guilty on the two narcotics counts. In sentencing Bircher, the district court granted the government's motions for upward departure and for enhancement based on the extent of Bircher's drug operation and his firearms, respectively. Bircher timely appeals both the conviction and sentence.
 
 II.
 DISCUSSION
 
 11
 A. Prosecutorial Comments in Closing Argument
 
 
 12
 Bircher chose not to testify at his trial. In closing argument, the prosecution, discussing the issue of Bircher's intent, observed: "You know Mr. Bircher, through his lawyer, makes a 'how do you know he had the intent--' " Defense counsel objected and moved for a mistrial on the ground that this comment improperly referred to Bircher's decision not to testify. The district court sustained the objection and denied the motion for mistrial, but promptly issued a curative instruction.
 
 
 13
 Shortly thereafter, the prosecution referred to Bircher's lifestyle and his expensive taste in homes and cars. He then remarked, "What does the defendant show as his means of support, how does he explain why he has--" Defense counsel again objected and moved for a mistrial. The district court again sustained the objection and denied the motion for mistrial. He then issued another curative instruction.
 
 
 14
 Bircher argues that the prosecution improperly commented upon his decision not to testify, thereby violating his Fifth Amendment rights. This court reviews such claims de novo. United States v. Mares, 940 F.2d 455, 461 (9th Cir.1991). Prosecutorial comments are improper if they are "manifestly intended to call attention to the defendant's failure to testify, or [are] of such a character that the jury would naturally and necessarily take [them] to be a comment on the failure to testify." Id. (quotation omitted). Comments on the inadequacy of an accused's defense do not violate the Fifth Amendment. United States v. Kessi, 868 F.2d 1097, 1106 (9th Cir.1989).
 
 
 15
 The prosecution's first comment, that Bircher, "through his counsel," made a defense, was permissible. See id. (upholding prosecutor's comment that defendant argued "through his counsel").
 
 
 16
 The second comment, however, is more troubling. This remark followed closely on the heels of the first, and referred to the defendant himself rather than to defense counsel or "the defense" in general. Cf. United States v. Soulard, 730 F.2d 1292, 1307 (9th Cir.1984) (no Fifth Amendment violation where prosecutor made "single isolated statement," and "referred to defense counsel, rather than to [defendant] by direct reference").[1]
 
 
 17
 However, the context of the remark shows that the prosecution was not referring to Bircher's failure to testify. After the objection by defense counsel, the prosecution proceeded to point out the implausibility of testimony by Bircher's mother as to his means of support. "In context, it is reasonably clear that the prosecutor was not alluding to [defendant's] failure to testify, but rather to the inadequacy of the witnesses whom the defendant did call to testify." United States v. D'Antonio, 801 F.2d 979, 982 (7th Cir.1986); see also Mares, 940 F.2d at 461 (no reversible error where "comments were intended to highlight what the prosecutor felt were weaknesses in [defendant's] case; they were not in any manner directed at [defendant's] failure to take the stand"). Moreover, the district court issued a prompt and thorough curative instruction. This court has held "that such instructions are sufficient to cure prejudice resulting from improper prosecutorial argument." See Mares, 940 F.2d at 961. Thus, although we do not condone such comments in general, we find that in this case they do not warrant reversal.
 
 B. The Informant's Testimony
 
 18
 At trial, defense counsel called Gray, the government informant, to the stand and played an audiotape of the March 1992 cocaine sale. On tape, Gray had asked Brooks, the undercover police officer, why he did not arrest two other individuals. Because Bircher was contending that someone else at the Hart Street house sold the cocaine, and because it was unclear whether the two mysterious other individuals were at that house or another one, the district court asked Gray to explain his taped comment. Gray responded that he "was telling [Brooks] why didn't they bust the people that was coming out of the ... other house up front.... [T]hey had just come out of the weed house with something."[2] The district court refused Bircher's resulting motion for a mistrial, but issued a cautionary instruction to the jury not to consider "the testimony concerning another house down the street or any events concerning another house down the street."
 
 
 19
 The district court's decision denying a motion for mistrial is reviewed for abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992). Bircher argues that the district court should have granted a mistrial, because the jury might have inferred his guilt from the unsavory character of the neighboring "weed house." Bircher is wrong. Gray's discussion of the other house was necessary to explain his comment and to rebut defense counsel's contention that the two other individuals, not Bircher, sold the cocaine. True, defense counsel may have gotten more than he bargained for with this line of questioning, but the trial court immediately cautioned the jury not to infer Bircher's guilt from the "weed house" reference. The court did not abuse its discretion in refusing to grant a mistrial.
 
 C. "Mere Presence" Instruction
 
 20
 At trial, Bircher argued that he did not possess or sell cocaine and that, although he owned the Hart Street residence, another individual lived there. "Mere proximity to contraband, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession" of that contraband. United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985). Bircher contends that the district court erred by refusing to instruct the jury that his "mere presence" at the Hart Street residence was insufficient to establish guilt.
 
 
 21
 This circuit has not yet resolved the issue of whether a district court's denial of a proposed jury instruction is reviewed de novo or for an abuse of discretion. United States v. LaFleur, 971 F.2d 200, 204 (9th Cir.1991) (noting conflict and applying de novo review where district court rejected proffered instruction as contrary to law), cert. denied, 113 S.Ct. 1292 (1993). Under either standard, however, Bircher's argument lacks merit.
 
 
 22
 The government's case against Bircher was not based on his "mere presence" at the scene of the crimes. On the distribution count, government witnesses testified that Bircher himself directly sold cocaine to an undercover agent, and that no one else was present. The jury was properly instructed that a conviction on this count required it to find that Bircher knowingly and intentionally distributed cocaine. "If the government's case is based on more than just a defendant's presence, and the jury is instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary." United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). Bircher's "mere presence" defense was based largely on Gray's cryptic audiotape reference to two other individuals; the jury was free to consider this evidence, along with Bircher's interpretation of it, in evaluating the credibility of Gray and his fellow government witnesses.
 
 
 23
 Meanwhile, on the possession count, the government's case was not based on Bircher's "presence" at all. Indeed, Bircher was not present when government agents searched his homes and discovered cocaine. Rather, the government's case was based on Bircher's ownership of the properties, his previous use of the Hart Street property as a point of sale, and the cash and firearms at the Clamdigger property. No "mere presence" instruction was warranted.
 
 D. Upward Departure
 
 24
 At sentencing, the district court departed upward two levels on three grounds: (1) the extent of Bircher's drug operations, (2) the "unusually high purity" of the cocaine involved, and (3) Bircher's offer to convert the cocaine into cocaine base, which carries higher penalties. Bircher contests all three.
 
 
 25
 This court reviews departures from the Sentencing Guidelines under the three-part test set forth in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). First, we review de novo whether the trial court had legal authority to depart. Id. at 746. Second, we review for clear error the factual findings in support of the aggravating circumstances identified as a basis for departure. Id. at 746-47. Finally, we review the extent of the departure for reasonableness "in light of the structure, standards, and policies of the [Sentencing Reform] Act and Guidelines." Id. at 750-51.
 
 
 26
 Bircher does not contest the district court's authority to depart upward on the grounds specified. Nor does he challenge the extent of the court's departure as unreasonable. Rather, he confines his arguments to the factual findings underlying each of the three bases for departure.
 
 1. Extent of Drug Operations
 
 27
 The district court found that drug trafficking was a major source of income for Bircher, and that the quantities of cocaine involved in the offenses of conviction did not adequately reflect the scope of his drug operations. The court noted the large sums of cash found at the Clamdigger address, and observed that Bircher owned two residences and used four expensive automobiles.
 
 
 28
 Bircher argues that he received title to the Hart Street residence via quit-claim from his fiance's mother; however, the fact remains that he maintained two homes, and that he was able to meet large mortgage payments on the Clamdigger home. Bircher also observes that title to the four cars was in his mother's name; however, the government presented evidence that the title documents were phony and that Bircher was the true owner. Finally, Bircher offers no explanation for the large sums of cash. "[P]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs." United States v. U.S. Currency, $83,310.78, 851 F.2d 1231, 1236 (9th Cir.1988) (quotation omitted). Bircher is essentially missing the forest for the trees. The district court's factual finding was not clearly erroneous.
 
 2. Unusually High Purity of Cocaine
 
 29
 "Trafficking in controlled substances ... of unusually high purity may warrant an upward departure [because t]he purity of the controlled substance ... is probative of the defendant's role or position in the chain of distribution." U.S.S.G. Sec. 2D1.1, comment. (n. 9). Here, the district court found that the cocaine involved in the two counts of conviction, which was of ninety-three and eighty-three percent purity respectively, warranted an upward departure. Bircher argues that there was no evidence or findings to establish the cocaine's comparative purity.
 
 
 30
 Bircher relies on United States v. Martinez-Duran, 927 F.2d 453, 456 (9th Cir.1991). There, this court rejected an upward departure where the district court made no finding as to the comparative purity of forty-six percent pure heroin, and where there was no evidence on that issue in the record. Id. at 456; see also United States v. Otero, 868 F.2d 1412, 1415 (5th Cir.1989) (district court may not rule on comparative purity without giving parties opportunity to address the issue).
 
 
 31
 Here, however, no detailed analysis of comparative purity was required: The high level of purity is self-evident, and three other circuits have upheld upward departures based on similar purity levels. See United States v. Legarda, 17 F.3d 496, 502 (1st Cir.1994) (88 percent pure cocaine), petition for cert. filed, No. 93-2003, 63 U.S.L.W. 3001 (U.S., June 6, 1994); United States v. Asseff, 917 F.2d 502, 504 (11th Cir.1990) (91 percent pure cocaine); United States v. Ford, 889 F.2d 1570, 1572 (6th Cir.1989) (92.9 percent pure cocaine).
 
 
 32
 3. Bircher's Offer to Convert Cocaine into Cocaine Base
 
 
 33
 Bircher's offer to convert or "rock up" the cocaine appears to be an entirely proper basis for departure, and Bircher does not dispute that point. Rather, he contends that the government did not establish that the cocaine could be converted. On that score, Bircher's offer to do so suffices. Cf. United States v. Steward, 16 F.3d 317, 321-22 (9th Cir.1994) (upholding sentence based on methamphetamine that defendant offered to sell rather than on ephedrine that defendant possessed, and holding that defendant bore burden of proving he was incapable of making good his offer).
 
 E. Firearm Enhancement
 
 34
 Based on the weapons found at Bircher's Clamdigger residence, the district court enhanced his base offense level by two points under section 2D1.1(b)(1) of the Sentencing Guidelines. Bircher contests this enhancement, primarily on the basis that the district court had previously dismissed the government's charge that Bircher used a firearm in relation to drug trafficking in violation of 18 U.S.C. Sec. 924(c)(1).
 
 
 35
 Under section 2D1.1 of the Guidelines, possession of a dangerous weapon, including a firearm, during a narcotics offense merits a two-level increase in the base offense level. U.S.S.G. Sec. 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n. 3). The district court's determination that a defendant possessed a firearm during the commission of a narcotics offense is reviewed for clear error. United States v. Willard, 919 F.2d 606, 609 (9th Cir.1990), cert. denied, 112 S.Ct. 208 (1991).
 
 
 36
 Bircher argues that the dismissal of the "use of firearm" charge under 18 U.S.C. Sec. 924(c) also mandates reversal of the firearm enhancement under section 2D1.1(b)(1). We disagree. Section 924(c) requires that a defendant not only possess a firearm during a narcotics offense, but that he "use" or "carry" that weapon during and in relation to that offense. 18 U.S.C. Sec. 924(c)(1). Meanwhile, the weapons enhancement under U.S.S.G. Sec. 2D1.1(b)(2) does not require a connection between the firearm and the offense; mere possession during the commission of the offense will suffice. United States v. Restrepo, 884 F.2d 1294, 1296 (9th Cir.1989). Accordingly, the Fourth, Sixth, Seventh and Tenth Circuits have held that dismissal or acquittal of a criminal charge under section 924(c) does not affect the sentence enhancement under section 2D1.1(b)(1). See United States v. Nunez, 958 F.2d 196, 199-200 (7th Cir.) (dismissal by government), cert. denied, 113 S.Ct. 168 (1992); United States v. Blankenship, 954 F.2d 1224, 1227 (6th Cir.) (dismissal), cert. denied, 113 S.Ct. 288 (1992); United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir.1991) (acquittal), cert. denied, 112 S.Ct. 1690 (1992), United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir.1991) (acquittal), cert. denied, 112 S.Ct. 1590 (1992).
 
 
 37
 Nor was the district court's finding clearly erroneous. Bircher does not dispute that he possessed the three weapons attributed to him by the district court: a loaded shotgun, an assault rifle, and a loaded handgun. DEA agents found these weapons at Bircher's Clamdigger address, together with a large amount of cash. Although the cocaine itself was located in Bircher's other residence, the number and type of weapons, the fact that they were loaded, plus the scope of Bircher's drug operation, show it was not clearly improbable that the weapons were connected with the offense. See Willard, 919 F.2d at 609-10 (upholding enhancement, based on number and type of weapons plus scope of drug operation, despite fact that weapons were found several miles away from drugs); cf. U.S.S.G. Sec. 2D1.1 (comment.) (n. 3) (enhancement not appropriate "if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet").
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable Fred Van Sickle, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At oral argument, the prosecuting attorney explained that his reference to the defendant was a mistake, induced partly by the distraction resulting from defense counsel's previous objection and the trial court's curative instruction
 
 
 [2]
 It is unclear whether the "other" house was Bircher's Clamdigger residence or another, unrelated house. For the reasons discussed below, we need not resolve this issue